UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

GREGORY T. CONWAY,            )
   Plaintiff,              )
                              )
vs.                           )       No. 15-3339
                              )
SLAVADOR GODINEZ, et.al.,     )
   Defendants              )

SUMMARY JUDGMENT ORDER

This cause is before the Court for consideration of the Defendants' motion for summary judgment. [61]

I. BACKGROUND

Plaintiff, a pro se prisoner, alleges 22 Defendants at Western Illinois Correctional Center violated his constitutional rights. Plaintiff has the following eight claims before the Court:

1) Defendant James Holder violated Plaintiff's First Amendment rights when Holder conducted a sexually abusive strip search on December 25, 2014 in retaliation for Plaintiff's previous grievances.

2) Defendant Holder violated Plaintiff's Eighth Amendment rights with a sexually abusive strip search on December 25, 2014.

3) Defendants Holder, Jim Watson and Rick Anderson violated Plaintiff's First Amendment rights when they retaliated against him for his grievances by either issuing a disciplinary report on December 29, 2014 or finding him guilty of the infraction and taking his television.

4) Defendants Holder and Watson conspired to deprive Plaintiff of his constitutional rights on December 29, 2014.

5) Defendants Tom Moore, John Hamilton, Mr. Duncan, Cory Huston, Todd Ham, Todd Shepler, Alex Banta, Timothy Tuter, Robert Powers, T. Roberts, A. Haley, Bradley Bowen, Matt Beswick, Isaac Dorsey, Rick Forman, Richard Ruble, Parker, Robert Fishell and Byron Law violated Plaintiff's Eighth Amendment rights based on his living conditions in segregation for 38 days in April and May of 2015.

6) Defendants Moore, Hamilton, Duncan, Huston, Ham, Shepler, Banta, Tuter, Powers, Roberts, Haley, Bowen, Beswick, Dorsey, Forman, Ruble, Parker, Fishell and Law retaliated against the Plaintiff for his complaints of sexual abuse by keeping him in an unsanitary cell for 38 days in April and May of 2015.

7) Officer Duncan retaliated against the Plaintiff for his grievances when he took his glasses and refused to return them on April 13, 2015.

8) Eye Doctor John Doe violated Plaintiff's Eighth Amendment rights when he failed to provide Plaintiff with glasses for more than five months. *See* December 16, 2015 Merit Review Order; April 27, 2016 Text Order.

The Illinois Department of Corrections (IDOC) Defendants have filed a motion for summary judgment on the issue of exhaustion of administrative remedies.[61]

II. FACTS

The Illinois Department of Corrections has an established grievance process. *See* 20 Ill. Admin. Code §§ 504.800 *et seq.* An inmate is first required to speak with a counselor about the contested issue. 20 Ill. Admin. Code § 504.810(a). If the counselor does not resolve the problem, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance officer submits his recommendation to the Chief Administrative Officer who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.830(d). If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal to the Director through the Administrative Review Board. The appeal must be filed within 30 days of the Chief Administrative Officer's decision. 20 Ill. Admin. Code § 504.850(a). The Director shall then review the findings and recommendations of the board and make a final determination within six month after receipt of the grievance. 20 Ill. Admin. Code § 504.850(f). When an inmate has received a copy of the Director's decision, the grievance procedure is complete.

An inmate may also request his grievance be handled on an emergency basis by sending it directly to the Chief Administrative Officer. 20 Ill.Admin. Code. §504.840.  The Chief Administrative Officer must then decide whether the issue shall be handled as an emergency.  If so, the Chief Administrative Officer must "expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." 20 Ill.Admin. Code. §504.840 (b).

Terri Anderson is the Manager of the Office of Inmate Issues and she is familiar with the record keeping for the Administrative Review Board (ARB). (Def. Memo., And. Aff., p. 1). Anderson has searched the ARB records for any grievances Plaintiff filed concerning an incident on December 25, 2014, a December 29, 2014 disciplinary ticket, living conditions in segregation in April or May of 2015, and the confiscation of eye glasses. (Def. Memo., And. Aff., p. 3).

On January 2, 2015, the ARB received an emergency grievance dated December 25, 2014.  The Plaintiff said Correctional Officers had violated his constitutional rights and he wanted an "independent investigation into the oppressive and racists culture…" (Def. Memo., Ex. A-2).  Plaintiff made no mention of a sexual assault. (Def. Memo., Ex. A-2).

On January 6, 2015, the ARB received Plaintiff's December 26, 2014 emergency grievance alleging his Fourteenth Amendment rights were violated. (Def. Memo., And. Aff., p. 4).  This time Plaintiff made specific reference to Defendant Holder placing a pen in his anus during a strip search and threatening retaliation. (Def. Memo., Ex. A-2, Dec. 26, 2014 Grv., p. 2).

The ARB returned both the December 25, 2014 and December 26, 2014 grievances because they did not have required documentation from Plaintiff's facility. (Def. Memo., And. Aff., p. 4).  The February 3, 2015 response from the ARB informs Plaintiff he must provide a

3

copy of the responses from the grievance officer and the Chief Administrative Officer. Plaintiff is also advised to contact Internal Affairs regarding his safety concerns. (Def. Memo., Ex. A-2).

Plaintiff responded by filing the same two December grievances with the ARB on February 9, 2015. (Def. Memo., And. Aff., p. 4). Again, Plaintiff had not attached the required paperwork and the ARB returned them to Plaintiff on February 26, 2015.(Def. Memo., Ex. A-3).

Plaintiff then submitted an emergency grievance to the ARB dated December 29, 2014 alleging Correctional Officers Holder and Watson violated his constitutional rights when they wrote a false disciplinary report against him in retaliation for previous grievances. (Def. Memo., Ex. A-4). This grievance was returned to Plaintiff on February 23, 2015 because it also did not have the required paperwork demonstrating he had submitted the grievance at his facility. (Def. Memo., And. Aff., p 4-5).

On May 16, 2015, the ARB received Plaintiff's December 26, 2014 grievance for a third time. (Def. Memo., And. Aff., p. 6; Ex. A-8). However, Plaintiff had included both the grievance officer's response and the Chief Administrator's April 22, 2015 response. The ARB denied Plaintiff's appeal on April 21, 2016. (Def. Memo., And. Aff., p. 6; Ex. A-8).

On April 10, 2015, the ARB received a grievance from the Plaintiff dated March 21, 2015. Plaintiff claimed his Eighth Amendment rights were violated when he was placed in a segregation cell on December 29, 2014. (Def. Memo., And. Aff., p. 5). Plaintiff claimed neither the sink, nor the toilet worked properly. He did not mention any specific Correctional Officer in his two page grievance. (Def. Memo., Ex. A-5). The ARB returned the grievance to the Plaintiff on May 7, 2015 because Plaintiff had not submitted the grievance within the required time sixty day frame. (Def. Memo, Ex. A-5).

On May 11, 2015, the ARB received an emergency grievance from the Plaintiff dated May 5, 2015 complaining about his cell conditions in April of 2015. (Def. Memo., And. Aff., p. 5)  Plaintiff noted he had reported the problems to Officers Duncan, Shipman, Huston, Ham, Banta, Bowen, Haley, Tuter, Korte, Fishel and Law. (Def. Memo., A-7).  The ARB returned the grievance to the Plaintiff because he had not submitted the required facility-level responses. (Def. Memo., And. Aff., p. 5).

On June 1, 2015, the ARB received Plaintiff's May 26, 2015 grievance concerning his living conditions in segregation in April of 2015. (Def. Memo., And. Aff., p. 6; Ex. A-11).  The ARB noted it was a duplicate of a grievance previously received and it was returned to the Plaintiff.

On June 4, 2015, the ARB received a lengthy grievance from the Plaintiff dated June 1, 2015. (Def. Memo., And. Aff., p. 6)  Plaintiff repeated many of his previous complaints from December 25, 26, and 29, 2014. (Def. Memo., And. Aff., p. 6; Ex. A-9).  Plaintiff also alleged he was denied medication for his serious medical needs.  The grievance was returned to the Plaintiff with directions to contact the Healthcare Unit. (Def. Memo., Ex. A-9).

On June 8, 2015, the ARB received Plaintiff's June 2, 2015 grievance. (Def. Memo., And. Aff., p. 6).  Plaintiff complained Officer Zimmerman told him no one cared about his grievances and his complaints would only make his prison life more difficult.  The officer then refused to help Plaintiff with food missing from his lunch tray. Plaintiff stated Zimmerman and other unspecified officers were retaliating against him for his grievances concerning the earlier sexual assault. (Def. Memo, Ex. A-10). The ARB denied the grievance on December 28, 2015. (Def. Memo., And. Aff., p. 6)

5

On June 17, 2015, the ARB received Plaintiff's April 13, 2015 emergency grievance. The Plaintiff complained officers confiscated his glasses when he was taken to a segregation cell on April 13, 2015. (Def. Memo., And. Aff., p. 5; Ex. A-6). Plaintiff also complained about his living conditions and stated unnamed staff members were retaliating against him. This grievance was also returned to Plaintiff because it was not submitted in the proper time frame. (Def. Memo., And. Aff., p. 5).

### III. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

### IV. ANALYSIS

The Defendants maintain the Plaintiff failed to exhaust his administrative remedies for his claims before filing his lawsuit. The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with a facility's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002); *see also Riccardo v. Rausch*, 375 F.3d 521, 523-24 (7th Cir. 2004). If an inmate fails to follow the grievance procedure rules, his claims will not be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

Plaintiff says each time he submitted a grievance to his counselor, he also submitted a copy of the grievance to the ARB in order to verify the "time line" he "wrote and mailed" each grievance. (Plain. Resp., p. 2). Plaintiff says he has resorted to this method "because Western Illinois Correctional Center has a reputation of disregarding grievances." (Plain. Resp., p. 13). And in fact, Plaintiff says he properly submitted each grievances identified by the Defendants at Western, but he failed to receive a response to most of them. Therefore, Plaintiff argues the grievance procedure was "unavailable" to him. (Plain. Resp., p. 6)

The PLRA, does not define "availability" for purposes of the exhaustion requirement. However, the Seventh Circuit has held that the "availability of a remedy is not a matter or what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v Sutton*, 2009 WL 330531 at 13 (7th Cir. Feb. 11, 2009) *citing Kaba v Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). For example, if a prison requires grievances to be filed on a

7

particular form, but does not make that form available, the process is unavailable. *Dale v Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). In addition, threatening a prisoner with violence for attempting to file a grievance makes the process unavailable. *Mehphill v New York*, 380 F.3d 680, 688 (2nd Cir. 2004). Similarly, if a prisoner is told he must wait to file, and that wait makes his grievance untimely, the process in unavailable. *Brown v Croak*, 312 F.3d 109, 112 (3rd Cir. 2002). And prison officials who engage in affirmative misconduct, *Dole v Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), or fail to respond to grievances, also render the grievance process unavailable to an inmate. *Lewis v Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

The IDOC Defendants chose not to respond to Plaintiff's argument and therefore there is no evidence before the Court concerning whether Plaintiff submitted any of his grievances at Western Illinois Correctional Center. Clearly, Plaintiff successfully submitted at least some of his grievances since he was able to complete the grievance procedure for at least two grievances. (Def. Memo, Ex. A-8, A-10). If Plaintiff did submit his grievances, but did not receive a response, then he correctly argues this grievance procedure was unavailable to him. *See Walker v Sheahan*, 526 F.3d 973, 979 (7th Cir. 200)(an inmate is not required to appeal his grievance if he submits his grievance to the proper authority but never receives a response.); *Dole,* 438 F.3d at 809 (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting those resources).

In addition, neither party addresses the fact that some of Plaintiff's grievances were marked as emergency grievances and the emergency procedure would not require a grievance officer response before submission to the ARB. *See* 20 Ill.Admin. Code. §504.840; *see also Johnson v Ghosh*, 2011 WL 2604837 at 4(N.D. Ill. June 30, 2011) (ARB refused to review because no grievance officer report, but "[t]his would have necessarily required (the plaintiff) to

8

resubmit his grievances through the normal process, but defendants present no evidence that anything in the Administrative Code required (plaintiff) to do so."); *Cooper v Evans*, 2010 WL 3895702 at 3 (S.D. Ill. Sept. 29, 2010)(inmate who seeks emergency review under §504.840 has no obligation to resubmit the grievance through normal channels.); *Haywood v Hathaway*, 2011 WL 1775734 at 2-3 (S.D. Ill. April 22, 2011)(finding that a requirement of resubmission "is not explicitly provided for anywhere in the administrative code" and the defendant's "remedy for changing this outcome…is not with this Court. Instead, his remedy lies with the Bureau of Prisons, and an amendment to the Illinois Administrative Code clarifying the sparsely defined IDOC emergency grievance procedures.").

Finally, the Defendants argue while Plaintiff did complete the grievance procedure for his claim alleging Defendant Holder conducted a sexually abusive and retaliatory strip search, Plaintiff filed this lawsuit before exhaustion was complete. The ARB responded to Plaintiff's grievance on April 21, 2016, but Plaintiff had already filed this lawsuit on December 3, 2015. The Defendants may be correct, but they have failed to address the fact that Plaintiff submitted his grievance to the ARB on May 16, 2015, but he did not receive a response for one year. *See* 20 Ill. Admin. Code § 504.850(f) (a final determination shall be made within six months after receipt of grievance).

Based on the record, the Court cannot find Plaintiff failed to exhaust his administrative remedies. The motion is therefore denied with leave to renew within 21 days. If Defendants chose to renew their motion, they must address the issues raised in this order. For instance, Plaintiff stated he submitted each of his grievances in the proper time and place required at Western Illinois Correctional Center. Therefore, Defendants must do more than simply say they did not receive the grievance. *See Schaefer v. Bezy*, 336 Fed.Appx. 558, 560 (7th Cir. 2009)

(defendants "must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable fact finder could find that [the Plaintiff] was prevented from exhausting his administrative remedies.").  Instead, Defendants must establish a record-keeping procedure which traces grievances from the initial submission to completion.

IT IS THEREFORE ORDERED:

1) The IDOC Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies is denied. [61]  If Defendants wish to renew their motion, it must be filed within 21 days and it must address the issues raised in this order.

2)  All discovery must now be completed on or before January 31, 2017, and any dispositive motions must be filed on or before February 28, 2017.

Entered this 8th day of November, 2016.


s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE